UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | |
|---|---|
| UNITED STATES OF AMERICA | CRIMINAL NO. 3:18-CR-48-SRU |
| v. | VIOLATION: |
| ROBERT V. MATTHEWS<br>and<br>LESLIE R. EVANS | 18 U.S.C. § 1343 (Wire Fraud)<br>18 U.S.C. § 1344 (Bank Fraud)<br>18 U.S.C. § 1349 (Conspiracy)<br>18 U.S.C. § 1957 (Illegal Monetary Transactions)<br>18 U.S.C. § 2 (Aiding and Abetting) |

INDICTMENT

The Grand Jury charges:

COUNTS ONE-EIGHT
(Wire Fraud)

At all times relevant to this Indictment:

The Defendants

1.  Defendant ROBERT V. MATTHEWS ("R. MATTHEWS") was a real estate developer and maintained personal residences in Connecticut and Florida.

2.  Defendant LESLIE R. EVANS ("EVANS") was a real estate attorney and a resident of Florida.

Other Relevant Individuals and Entities

3.  Nicholas Laudano ("Laudano"), who is charged separately, was a construction contractor who worked as a contractor for the Palm House Hotel in Palm Beach, Florida. Laudano also operated multiple pizza restaurants in Florida and Connecticut. Laudano controlled a number of entities, including New Haven Contracting South Inc., NJL Development Group, LLC, NJL Development Group Inc., and NJL Investments.

1

4. Gerry Matthews ("G. Matthews"), who is charged separately, owned and operated a commercial real estate brokerage firm in Connecticut known as Matthews Commercial Properties, LLC ("MCP"). G. Matthews maintained a savings account for MCP at Webster Bank in Connecticut (the "MCP savings account"). G. Matthews is the brother of R. MATTHEWS.

### EB-5 Funding

5. The EB-5 visa program ("EB-5 program") was a federal program by which foreign nationals and their families were eligible to apply for lawful permanent resident status (commonly known as a "green card") if they invested in a development project in the United States.

6. The particulars of the EB-5 program varied by project and location, but relevant to this Indictment, an investor was entitled to apply for a green card if, among other requirements, (1) the investor made a $500,000 investment in a development project in the United States and (2) that project ultimately employed ten or more individuals.

7. Various entities in the United States acted as middlemen between potential foreign investors and investment projects. South Atlantic Regional Center, LLC ("SARC") was one such entity based in Palm Beach, Florida.

8. SARC's primary function was to advertise EB-5 projects to foreign investors, collect funds from foreign investors that were earmarked for certain development projects, and make that funding available to the respective development project.

### The Palm House Hotel

9. The Palm House Hotel ("PHH") was located at 160 Royal Palm Way, Palm Beach, Florida.

10. The PHH was one development project advertised by SARC to EB-5 investors in or around 2012 through in or around 2014.

11. R. MATTHEWS was the developer in charge of the PHH development project.

12. R. MATTHEWS had a lengthy history with the PHH. He originally purchased the property in August 2006. R. MATTHEWS lost the PHH in foreclosure in 2009. In August 2013, R. MATTHEWS reacquired control of the PHH through an entity called Palm House, LLC. G. Matthews, however, was listed as owning 99% of Palm House, LLC in its incorporation documents. "Minority Owner-1," whose identity is known to the Grand Jury, had secured additional financing for R. MATTHEWS and owned the remaining 1%.

13. Laudano continuously worked on the development and construction of the PHH as a contractor beginning in or around 2006 through in or around 2016.

### The Wire Fraud Scheme

14. Beginning in or around 2012 and continuing through in or around January 2018, in the District of Connecticut and elsewhere, R. MATTHEWS, EVANS, and others known and unknown to the Grand Jury, knowingly and with intent to defraud, devised and intended to devise, and participated in, a scheme and artifice to defraud and obtain money and property from SARC, EB-5 investors, and others by means of materially false and fraudulent pretenses, representations and promises, and in furtherance of that scheme used and caused to be used interstate wires.

15. The purpose of the scheme and artifice was for R. MATTHEWS, EVANS, and others known and unknown to the Grand Jury to enrich themselves and their companies by defrauding the EB-5 investors, SARC, and others out of money and property owned by and under

the control of the EB-5 investors, SARC, and others by means of materially false and fraudulent pretenses, representations, and promises.

## Manner and Means of the Wire Fraud Scheme

The manner and means by which R. MATTHEWS, EVANS, their co-conspirators, agents, and others known and unknown to the Grand Jury sought to accomplish and did accomplish the objects of the wire fraud scheme included, among others, the following:

16. R. MATTHEWS, EVANS, their co-conspirators, agents, and others made several material misrepresentations to SARC, prospective EB-5 investors, and/or Minority Owner-1, including that (i) the proceeds of the loan from EB-5 investors would be used to develop the PHH; (ii) certain well-known individuals would be on the PHH advisory board and certain well-known entertainers, businesspeople, and politicians "will be a part of the club"; and (iii) G. Matthews was a member of the Palm House, LLC management team and was the 99% owner of Palm House, LLC.

17. Despite those misrepresentations to the contrary, in truth, and as the defendants well knew, (i) R. MATTHEWS, EVANS, their co-conspirators, agents, and others used EB-5 funding for purposes not related to the PHH project, including for the personal gain of R. MATTHEWS and others; (ii) there was no evidence any of the proffered well-known individuals would be on the PHH advisory board or would be members of the club; and (iii) while G. Matthews was the nominal 99% owner of Palm House, LLC, R. MATTHEWS controlled that company and it belonged to G. Matthews in name only.

18. EB-5 investors decided to invest in the PHH project by providing money to accounts controlled by SARC. SARC, in turn, provided EB-5 money earmarked for use at the

PHH either (1) into an account in the name of 160 Royal Palm LLC at Regions Bank in Florida that was controlled by R. MATTHEWS, EVANS, and their agents ("160 Royal Palm Account") or (2) into EVANS' Interest on Trust Account that was used to maintain his clients' funds at First United Bank in Florida (the "EVANS IOTA Account").

19. Despite their misrepresentations to the contrary, R. MATTHEWS, EVANS, their co-conspirators, agents, and others used this EB-5 funding for purposes not related to the PHH project, including for their own personal gain and the gain of others.

20. To use EB-5 funding for purposes not related to the PHH project, including for their own personal gain and the gain of others, R. MATTHEWS, EVANS, their co-conspirators, agents, and others wired EB-5 funds from the 160 Royal Palm Account and the EVANS IOTA Account into and through various accounts, including the following:

    a. G. Matthews' MCP Savings account located in Connecticut;

    b. An account at First Bank of the Palm Beaches in Florida in the name of New Haven Contracting South, which was controlled by Laudano ("NHCS Account-1");

    c. An account at Regions Bank in Florida in the name of New Haven Contracting South, which was controlled by Laudano ("NHCS Account-2")

    d. An account at First Bank of the Palm Beaches in Florida in the name of NJL Development LLC, which was controlled by Laudano ("NJL Development Account-1");

    e. An account at Wells Fargo in Florida in the name of NJL Development Group, Inc., which was controlled by Laudano ("NJL Development Account-2");

      f.      An account at Regions Bank in Florida in the name of Bonaventure 22 LLC, which was controlled by R. MATTHEWS and others (the "Bonaventure Account"); and

      g.      An account at Regions Bank in Florida in the name of Mirabia LLC, which was controlled by R. MATTHEWS and others (the "Mirabia Account").

21. G. Matthews, acting at R. MATTHEWS' direction, applied the EB-5 money that had been moved into G. Matthews' MCP Savings account to the credit card debts of R. MATTHEWS and others, or moved the money into other accounts controlled by R. MATTHEWS and others.

22. In or around February 2014 and April 2014, R. MATTHEWS, EVANS, their co-conspirators, agents, and others purchased the property located at 115 Lower Church Hill Road, Washington Depot, Connecticut out of a foreclosure auction with EB-5 money diverted from the PHH project by using a straw company, NJL Development Group, LLC, which was under the control of Laudano.

23. R. MATTHEWS and others used EB-5 funds in the Bonaventure Account and the Mirabia Account to support his own and his family's lifestyle, including but not limited to the purchase of a property located at 105 Lower Church Hill Road, Washington Depot, Connecticut, in or around May 2014 and June 2014.

24. In or around June 2014, R. MATTHEWS and others purchased a one hundred and fifty-one-foot yacht through a down payment made with EB-5 money and a loan as well as the use of shell companies that were controlled by R. MATTHEWS and others.

6

Executions of the Wire Fraud Scheme

25. On or about the dates set forth in each count below, in the District of Connecticut and elsewhere, for the purpose of executing and attempting to execute the aforementioned scheme and artifice to defraud and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises as described above, R. MATTHEWS and EVANS did knowingly transmit and cause to be transmitted, by means of wire communication in interstate and foreign commerce, certain writings, sings, signals an sounds, each wiring as set forth below constitution a separate count of this Indictment:

| Count | Date | Description of Use of Interstate Wires |
|---|---|---|
| 1 | 2/1/14 | An email sent from R. MATTHEWS' email account in Florida to G. Matthews' email account in Connecticut forwarding login instructions to bid on the property at 115 Lower Church Hill Road. |
| 2 | 2/3/14 | A wire for $136,237.50 from the EVANS IOTA account in Florida to an account at Farmington Savings Bank in Connecticut for the purchase of 115 Lower Church Hill Road by NJL Development Group, LLC. |
| 3 | 2/5/14 | A wire in the amount of $8,592.40 of EB-5 money sent from the 160 Royal Palm Account in Florida to the MCP Savings account in Connecticut. |
| 4 | 4/29/14 | An email sent from an account in the name of an individual with the initials M.P. in Connecticut to Laudano's email account in Florida with documents related to the purchase of 115 Lower Church Hill Road, which was purchased with EB-5 funds. |
| 5 | 6/30/14 | A check in the amount of $12,717.46, which caused the use of interstate wires in moving money from the 160 Royal Palm Account in Florida to the MCP Savings account in Connecticut. |
| 6 | 6/30/14 | A check in the amount of $10,837.86, which caused use of the interstate wires in moving money to move from the 160 Royal Palm Account in Florida to the MCP Savings account in Connecticut. |
| 7 | 10/20/14 | An email sent from the account of an individual working for R. MATTHEWS in Florida to G. Matthews' email account in Connecticut, blind copying R. MATTHEWS' email account and attaching a letter relieving Minority-Owner-1 of his position as Manager of Palm House, LLC. |

| Count | Date | Description of Use of Interstate Wires |
|---|---|---|
| 8 | 10/21/14 | An email sent from G. Matthews' email account in Connecticut to EVANS' email account, appointing EVANS as the managing member of Palm House LLC. |

All in violation of Title 18, United States Code, Section 1343.

## COUNT NINE
(Bank Fraud)

26. Paragraphs 1 through 25 of this Indictment are reincorporated as if fully set forth herein.

### Background on 115 Lower Church Hill Road

27. R. MATTHEWS purchased two properties in or around January 2001 for $3,900,000: 115 Lower Church Hill Road and 101 Lower Church Hill Road, both in Washington Depot, Connecticut. These purchases were initially financed with a $2,000,000 mortgage and two lines of credit worth $400,000 and $375,000.

28. On or about May 24, 2004, R. MATTHEWS refinanced 115 Lower Church Hill Road with Washington Mutual Bank for $3,600,000. That loan was later assigned to JPMorgan Chase Bank NA ("JPMC"), a bank whose deposits were insured by the Federal Deposit Insurance Corporation.

29. In or about September 2013, JPMC foreclosed on the loan and took ownership of 115 Lower Church Hill Road. That property was then placed for foreclosure sale at auction by Ten-x d/b/a Auction.com (hereinafter "Auction.com").

### The Bank Fraud Scheme

30. Beginning in or about 2012 and continuing through in or about April 2016, in the District of Connecticut and elsewhere, R. MATTHEWS, EVANS, and others known and unknown to the Grand Jury, knowingly and with intent to defraud devised and intended to devise, and participated in, a scheme and artifice to defraud JPMC, a federally insured financial institution, and to obtain moneys, funds, credits, assets, and other property owned by or under the custody or control of JPMC, by means of materially false and fraudulent pretenses representations, and promises, and by means of omissions of material fact.

31. The purpose of the bank fraud scheme was to deceive JPMC, which had foreclosed on R. MATTHEWS' property at 115 Lower Church Hill Road, into re-selling the property to R. MATTHEWS, through a straw purchaser, at a significant loss, thereby permitting R. MATTHEWS and others to continue to live there and act as owners of the property.

### Manner and Means of the Bank Fraud Scheme

The manner and means by which R. MATTHEWS, EVANS, their co-conspirators, agents, and others known and unknown to the Grand Jury sought to accomplish and did accomplish the objects of the bank fraud scheme included, among others, the following:

32. R. MATTHEWS, EVANS, their co-conspirators, agents and others entered into an arrangement among themselves and with Laudano whereby:

    a. Laudano would purchase out of foreclosure, through a shell company, the property at 115 Lower Church Hill Road from JPMC at a significant discount, using EB-5 money from R. MATTHEWS that R. MATTHEWS had diverted from the PHH project;

  b. R. MATTHEWS would continue to live at the property with his family and to act as owner of the property; and

  c. R. MATTHEWS, EVANS, and Laudano would conceal from JPMC the fact that Laudano was purchasing 115 Lower Church Hill Road with money provided by R. MATTHEWS and that R. MATTHEWS would control the property through Laudano, knowing that JPMC would not have sold the property to Laudano if they knew of the source of the funds and Laudano's relationship with R. MATTHEWS.

33. On or about February 3, 2014, R. MATTHEWS, EVANS, Laudano, their co-conspirators, agents, and others established NJL Development Group, LLC in the state of Delaware under the control of Laudano, with the intent to use NJL Development Group, LLC as a shell company to conceal R. MATTHEWS' involvement and the source of funds in the purchase of 115 Lower Church Hill Road.

34. In or around February 2014, R. MATTHEWS, EVANS, Laudano, their co-conspirators, agents, and others in fact arranged the purchase of 115 Lower Church Hill Road from JPMC through the straw entity NJL Development Group, LLC, which was controlled by Laudano, to conceal R. MATTHEWS' involvement in the transaction as well as the source of funds.

35. In or around February 2014, Laudano executed a sales agreement with JPMC to purchase 115 Lower Church Hill Road. On page 5 of the sales agreement under section 5(i), the parties to the sales contract agreed that JPMC had the right to terminate the agreement if the buyer (Laudano and NJL Development Group, LLC) was the former mortgagor (R. MATTHEWS) of the property whose interest was foreclosed/acquired by a deed-in-lieu of foreclosure, or is related to or affiliated in any way with the former mortgager, and the buyer has not disclosed this fact to

the seller (JPMC) in writing prior to the seller's acceptance of the agreement. Notwithstanding this provision, neither Laudano nor R MATTHEWS disclosed to JPMC their relationship or the source of the purchase funds.

36. On or about February 3, 2014, R. MATTHEWS, EVANS, Laudano, their co-conspirators, agents and others sent and caused to be sent a letter from EVANS to Auction.com. In the letter, EVANS falsely and fraudulently represented to Auction.com that Laudano and his company NJL Development Group, LLC had provided $2,750,000.00 to EVANS, from which the down payment for the property at 115 Lower Church Hill Road would be drawn. In fact, at no point did either Laudano or NJL Development Group, LLC provide $2,750,000.00 to EVANS. Instead, the down payment for the property came from comingled client funds in the EVANS IOTA Account.

37. On or about February 3, 2014, R. MATTHEWS, EVANS, their co-conspirators, agents and others wired and caused to be wired $136,237.50 from the EVANS IOTA Account in Florida to an account at Farmington Savings Bank in Connecticut for the down payment on the property at 115 Lower Church Hill Road.

38. On or about April 2, 2014, Laudano opened NHCS Account-1.

39. On or about April 30, 2014, Laudano opened NJL Development Account-1.

40. On or about April 29, 2014, R. MATTHEWS, EVANS, Laudano their co-conspirators, agents and others diverted $2,650,000 of EB-5 money (earmarked for the PHH) from the 160 Royal Palm Account to NHCS Account-1.

41. On or about April 30, 2014, R. MATTHEWS, EVANS, Laudano, their co-conspirators, agents and others transferred, and caused the transfer of, $2,655,000 from NHCS Account-1 to NJL Development Account-1.

42. On or about April 30, 2014, R. MATTHEWS, EVANS, Laudano, their co-conspirators, agents and others wired, and caused the wiring of, $2,601,646 from NJL Development Account-1 to a bank account in Connecticut to purchase the property at 115 Lower Church Hill Road.

In violation of Title 18, United States Code, Sections 1344 and 2.

## COUNT TEN
(Conspiracy to Commit Wire Fraud and Bank Fraud)

43. Paragraphs 1 through 42 of this Indictment are reincorporated as if fully set forth herein.

44. Beginning in or about 2012 through in or about January 2018, in the District of Connecticut and elsewhere, R. MATTHEWS and EVANS, together with others known and unknown to the Grand Jury, did knowingly combine, conspire, confederate, and agree together and with each other, to commit offenses against the United States as follows:

    a. to devise and intend to devise a scheme and artifice to defraud and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises and for the purpose of executing and attempting to execute the scheme and artifice to knowingly transmit, and cause to be transmitted, by means of wire communication in interstate and foreign commerce, certain writings, signs, signals and sounds, in violation of Title 18, United States Code, Section 1343; and

   b. to devise and intend to devise a scheme and artifice to defraud JPMC, a federally insured financial institution, and to obtain money, funds, credits, assets, and other property owned by and under the custody and control of JPMC, by means of materially false and fraudulent, pretenses, representations, and promises, in violation of Title 18, United States Code Sections 1344(1) and (2).

All in violation of Title 18, United States Code, Section 1349.

## COUNTS ELEVEN-SIXTEEN
(Illegal Monetary Transactions Using Wire Fraud Proceeds)

  45. Paragraphs 1 through 44 of this Indictment are reincorporated as if fully set forth herein.

  46. On or about the dates set forth in each count below, in the District of Connecticut and elsewhere, the defendant named in each count did knowingly engage, and aided and abetted and caused others to engage, in monetary transactions in criminally derived property of a value greater than $10,000 involving financial institutions that are engaged in, and the activities of which affect, interstate commerce, such property having been derived from a specified unlawful activity—namely wire fraud in violation of Title 18, United States Code, Section 1343—as follows:

| Count | Date | Defendant Charged | Charged Monetary Transaction | Origin of Funds |
|---|---|---|---|---|
| 11 | 1/8/14 | R. MATTHEWS | A $25,000 wire from NHCS Account-2 to G. Matthews' MCP Savings account. | A transfer of $50,000 of EB-5 money from the 160 Royal Palm Account into NHCS Account-2 on or about January 7, 2014. |

| Count | Date | Defendant Charged | Charged Monetary Transaction | Origin of Funds |
|---|---|---|---|---|
| 12 | 4/30/14 | R. MATTHEWS and EVANS | A $2,601,646.32 wire from NJL Development Account-1 to an account at Webster Bank in Connecticut. | A wire of $2,650,000 of EB-5 money from the 160 Royal Palm Account to NHCS Account-1 on or about April 29, 2014, and then a subsequent transfer of $2,655,000 from NHCS Account-1 to NJL Development Account-1 on or about April 30, 2014. |
| 13 | 5/2/14 | R. MATTHEWS | A $50,000 wire from NJL Development-1 Account to G. Matthews' MCP Savings account. | |
| 14 | 5/27/14 | R. MATTHEWS | A $100,000 wire from the Bonaventure Account to a Webster Bank account in Woodbury, Connecticut for the purchase of the property at 105 Lower Church Hill Road, Washington Depot, Connecticut. | A transfer of $1,100,000 of EB-5 money from the 160 Royal Palm Account to the Bonaventure Account on or about May 27, 2014. |
| 15 | 6/23/14 | R. MATTHEWS | A $454,715.53 wire from the Bonaventure Account to a Webster Bank account in Woodbury, Connecticut for the purchase of the property at 105 Lower Church Hill Road, Washington Depot, Connecticut. | |
| 16 | 6/23/14 | R. MATTHEWS | A $300,000 wire from the Bonaventure Account to G. Matthews' MCP Savings account. | |

All in violation of Title 18, United States Code, Sections 1957 and 2.

## COUNTS SEVENTEEN-TWENTY
(Illegal Monetary Transactions Using Bank Fraud Proceeds)

47. Paragraphs 1 through 46 of this Indictment are reincorporated as if fully set forth herein.

48. In or about November 2014, several months following the purchase of 115 Lower Church Hill Road from JPMC through straw buyer NJL Development Group, LLC, R. MATTHEWS, his co-conspirators, agents, and others took out a loan secured by 115 Lower Church Hill Road from an individual with the initials K.M.

49. On or about November 23 and 24, 2014, the loan proceeds were transferred from an account at Webster Bank, which is a federally insured financial institution in Connecticut, to various accounts controlled by Laudano, and then to several other accounts, all at the direction of R. MATTHEWS, Laudano and other co-conspirators.

### Transactions in Criminally Derived Proceeds

50. On or about the dates set forth in each count below, R. MATTHEWS did knowingly engage, and aided and abetted and caused others to engage, in monetary transactions in criminally derived property of a value greater than $10,000 involving financial institutions that are engaged in, and the activities of which affect, interstate commerce, such property having been derived from a specified unlawful activity—namely bank fraud in violation of Title 18, United States Code, Section 1344—as follows:

| Count | Date | Monetary Transaction | Origin of Funds |
|---|---|---|---|
| 17 | 11/24/14 | A $140,00 wire from an account at Webster Bank in Connecticut to NHCS Account-1. | Proceeds from the loan secured by 115 Lower Church Hill Road ("loan proceeds"). |
| 18 | 11/24/14 | A $1,034,712.91 wire from an account at Webster Bank in Connecticut to NJL Development Account-2. | |
| 19 | 11/28/14 | A $100,000 wire from the Mirabia Account to an account at TD Bank located in Connecticut. | A November 25, 2014 wire of $825,000 in loan proceeds into the Mirabia account. |
| 20 | 11/28/14 | A $211,864.58 wire from the Mirabia Account to an account at TD Bank located in Connecticut. | |

In violation of Title 18, United States Code, Sections 1957 and 2.

A TRUE BILL

/s/
FOREPERSON

UNITED STATES OF AMERICA

MICHAEL J. GUSTAFSON
FIRST ASSISTANT UNITED STATES ATTORNEY

JOHN T. PIERPONT, JR.
ASSISTANT U.S. ATTORNEY

16