1      UNITED STATES DISTRICT COURT

2          DISTRICT OF CONNECTICUT

3   - - - - - - - - - - - - - -  x
                                 :
4   UNITED STATES OF AMERICA,     :  Case No 18CR48(VAB)
                                 :
5            Government,          :
           vs.                    :
6                                 :  915 Lafayette Blvd
    ROBERT V. MATTHEWS,           :  Bridgeport, CT
7                                 :  April 17, 2018
             Defendant.          :
8   - - - - - - - - - - - - - -  X

9

        TRANSCRIPT OF ARRAIGNMENT AND BOND HEARING
10
    BEFORE:  THE HONORABLE VICTOR A. BOLDEN, U.S.D.J.
11

12  APPEARANCES:
    FOR THE GOVERNMENT:        JOHN PIERPONT, ESQ.
13                             US Attorney's Office - CT
                               157 Church Street, 25th
14                             Floor
                               New Haven, CT 06510
15

16

17  FOR THE DEFENDANT:         DAVID RING, ESQ.
                               Wiggin & Dana
18                             265 Church Street
                               New Haven, CT 06510
19

20

21

               Sharon Montini, RMR, FCRR
22                915 Lafayette Blvd
                 Bridgeport, CT 06604
23               Official Court Reporter

24

25

1          THE COURT:  Good afternoon.  Please be

2    seated.  We're here in United States v. Robert

3    Matthews.  Will counsel please state their name for

4    the record.

5          MR. PIERPONT:  Assistant United States

6    Attorney John Pierpont on behalf of the government.

7    Joining me at counsel table is Special Agent Stephen

8    West of the FBI, Special Agent Sean Darling from the

9    IRS, and Financial Analyst Lisa Carney from the FBI.

10   Good afternoon.

11         THE COURT:  Good afternoon to all of

12   you.

13         MR. RING:  Good afternoon, your Honor.

14   Thank you for appearing in this matter on short

15   notice.  David Ring for Bob Matthews.  I should note

16   for the record I'm here for today's appearance only

17   until Mr. Matthews works out his representation.  I

18   should note next to me is Mr. Matthews.

19         THE COURT:  Good afternoon, Mr. Ring.

20   Good afternoon, Mr. Matthews.

21         All right, Mr. Pierpont, I understand

22   that the purpose of today is for an arraignment.  Is

23   that correct?

24         MR. PIERPONT:  That is correct, your

25   Honor.

1          THE COURT:  All right, thank you very

2     much.

3          Mr. Ring, do you have a copy of the

4     indictment that identifies Mr. Matthews as the

5     defendant?

6          MR. RING:  Yes, your Honor.

7          THE COURT:  And have you had an

8     opportunity to review it with Mr. Matthews?

9          MR. RING:  Yes, your Honor.

10          THE COURT:  And, Mr. Pierpont, would you

11     review all of the charges that Mr. Matthews faces in

12     this indictment and the maximum penalties were he to

13     be convicted of these charges.

14          MR. PIERPONT:  Yes, your Honor.  The

15     indictment is a 20-count indictment.  Counts One

16     through Eight of the indictment charge Mr. Matthews

17     with wire fraud, in violation of 18, United States

18     Code, Section 1343.  It carries a maximum term of

19     imprisonment of 20 years, a $250,000 fine.  The

20     alternative fine provision of 18, United States

21     Code, 3671(d) is also applicable here.  There's a

22     maximum term of supervised release of three years.

23     That's Counts One through Eight.

24          Count Nine of the indictment charges Mr.

25     Matthews with bank fraud, in violation of, 18 United

States Code, Section 1344.  That carries the
following maximum penalties:  30 years'
imprisonment; a $1 million fine -- I mentioned the
alternative fine provision, which is also applicable
here -- and a five-year term of supervised release.

Count Ten charges Mr. Matthews with
conspiracy to commit bank and wire fraud, in
violation of 18, United States Code, Section 1349.
The maximum penalties there:  30 years'
imprisonment; a million dollar fine, or the
alternative fine provision; and five years of
supervised release.

And Counts Eleven through Twenty charge
Mr. Matthews with illegal monetary transactions, in
violation of 18, United States Code, Section 1957.
The maximum penalties there are:  10 years;
$250,000, or the alternative fine provision; and a
three-year term of supervised release.

THE COURT:  Thank you very much, Mr.
Pierpont.

Mr. Matthews -- stand please.  Do you
understand the charges against you, sir?

THE DEFENDANT:  Yes, I do, your Honor.

THE COURT:  All right.  And would you
like me to read the indictment -- have the

indictment read aloud to you or do you waive a
reading of the charges?

      THE DEFENDANT:  I waive the reading,
your Honor.

      THE COURT:  Mr. Ring, do you expect Mr.
Matthews to plead guilty to these charges?

      MR. RING:  I expect him to plead not
guilty.

      THE COURT:  Not guilty to these charges.
My apologies.

      MR. RING:  Trick question, Judge.

      THE COURT:  I'm sorry, I didn't mean it
to be a trick.

      All right, thank you very much.

      Ms. Perez, would you put Mr. Matthews to
plea on the charges in the criminal case No. 18cr48.

      THE CLERK:  In the case of United States
of America v. Robert Matthews, Criminal No.
3:18cr48(VAB), as to Counts One through Eight of the
indictment charging you with a violation of Title
18, United States Code, Sections 1343, what is your
plea?

      THE DEFENDANT:  Not guilty.

      THE CLERK:  As to Count Nine of the
indictment charging you with a violation of Title

18, United States Code, Section 1344, what is your plea?

THE DEFENDANT:  Not guilty.

THE CLERK:  As to Count Ten of the indictment charging you with a violation of Title 18, United States Code, Section 1349, what is your plea?

THE DEFENDANT:  Not guilty.

THE CLERK:  And as to Counts Eleven through Twenty of the indictment charging you with a violation of Title 18, United States Code, Section 1957, what is your plea?

THE DEFENDANT:  Not guilty.

THE CLERK:  Your Honor, the defendant pleads not guilty as to Counts One through Twenty of the indictment.

THE COURT:  Thank you very much, Ms. Perez.

You may sit down.

Mr. Ring, are you making any application with respect to the conditions of bond set in Florida?

MR. RING:  Yes, your Honor, there are some conditions I'd like modified.  I have gone through them with the government.  We have some

agreement on some, some nonagreement on others.  If
I may approach.

THE COURT:  Yes, please.

MR. RING:  Does the Court have the
document in front of it?

THE COURT:  I believe I do.

MR. RING:  I'm looking at what's listed
as page 2A.  It's got 1 through 12.  If I can --

THE COURT:  Yes.

MR. RING:  Some of these are unclear, so
I think it would be helpful to me, and maybe helpful
for the record, if I just go through all of them
right now.

THE COURT:  That's fine.  We're in no
rush, Mr. Ring.  We're going to take our time.
These are important matters.  I know it's important
to Mr. Matthews and it's important to the United
States, and the Court takes it seriously, so go
ahead and take your time.

MR. RING:  Thank you.  I appreciate it.
So No. 1 -- actually, I should start -- I'm sorry,
you are telling me to go slow and I should heed your
warning.  The bond is $500,000 secured bond, or at
least partially secured bond, and there is no issue,
I don't believe, with the government or with the

defendant with regard to that matter.  So these are

all the conditions of the bond.

       With regard to Condition No. 1,

surrendering passport, that's been completed, and I

don't think there is any dispute on that.

       2, report to pretrial services as

directed.  I expect that will continue, and my

understanding is Mr. Matthews has been compliant

with that condition.

       No. 3 relates to mental health

assessment.  That condition is fine.

       No. 4 is no contact.  It's a little bit

vague.  The way we're reading that condition is that

it prohibits Mr. Matthews from having contact --

       THE COURT:  With any victims or

witnesses.

       MR. RING:  With anyone that's identified

by the government as a victim or witness.  That

hasn't happened yet because we haven't had discovery

because I'm now here for the first time asking for

discovery from the government.  So I don't know if

the Court needs to amend the document -- or I think

it's probably sufficient on the record here for us

to just explain that this condition is being

interpreted as no contact with the witnesses or

1  victims as identified -- as they are identified by

2  the government to the defendant through counsel, if

3  that's acceptable with the Court.

4          THE COURT:  Mr. Pierpont, why don't we

5  take them one by one.

6          MR. PIERPONT:  That is acceptable, your

7  Honor, to the government.  I would add the caveat,

8  although there has been an indictment returned, we

9  are continuing to investigate, and the

10 investigations are ongoing.  So to the extent that

11 there are additional victims or witnesses identified

12 as time goes on, provided I can supplement any list

13 that we provide to defense counsel as we continue to

14 identify those individuals, the government would not

15 have an issue.

16         THE COURT:  I think -- I understood Mr.

17 Ring, I think he was contemplating covering that,

18 which is no witnesses or victims, and based on what

19 we know now and this additional that may come -- but

20 go on, Mr. Ring, why don't you clarify.

21         MR. RING:  Yeah, so I think it might

22 have been covered by what I said, but now I'm

23 concerned that Mr. Matthews is going to be expected

24 to maybe hit a moving target.  The Court's standing

25 order on discovery obligates the government to

notify the defendant in regard to who the witnesses
are, presumably, and two, who the victims are.
There is nothing stopping the government from
supplementing that, and that's what I would like to
tether this to, just so we can have some process
around it.  As the government notifies Mr. Matthews
through counsel formally as to who the victims and
witnesses are, that information will be conveyed to
Mr. Matthews and he will have no contact with those
persons.

THE COURT:  And I assume there is no
objection, Mr. Pierpont.  I think essentially it
would boil down to the "no contact" language.  It
would we no contact with any witnesses or victims
identified by the government to Mr. Matthews.

MR. RING:  Correct, or through counsel.
Yes.

THE COURT:  To Mr. Matthews or through
counsel.  And so do you want to modify -- I assume
we're going to basically modify that No. 4 to
reflect that.

MR. RING:  Yes.  That would be helpful,
your Honor.

THE COURT:  Thank you, Mr. Pierpont.

MR. RING:  No. 5, no firearms, I don't

believe that's an issue.

No. 6, do not encumber posted property as bond, that's not an issue.

No. 7, GPS monitoring.  So my understanding is Mr. Matthews, as reflected in this document, was put on conditional, provisional monitoring for 30 days without prejudice for him to raise the issue now again as to whether he should continue on GPS monitoring.  It's my request that that condition be removed.  The government -- I have spoken to the government about this.  The government is not in agreement on this condition.  It may be helpful for us to push this one to last because this is the one that --

THE COURT:  Okay.

MR. RING:  -- we're probably going to kick around in argument a little bit, your Honor.

THE COURT:  That's fine.

MR. RING:  The next one is travel extended to the entire state of Florida and Connecticut.  Mr. Matthews has a child who is in college in New Hampshire.  I've asked that he be allowed to travel to New Hampshire as well.  My understanding is the government has no objection to that.  Additionally, I would ask that he be allowed

1   to travel outside of Florida, Connecticut and New

2   Hampshire to the extent acceptable by pretrial

3   services.  So, in other words, he'd ask pretrial

4   services, if they agree, he can travel; if not, I

5   have to file a motion to amend conditions.  Fairly

6   standard condition for this to be delegated to

7   pretrial services.

8            My understanding is the government

9   doesn't object to this.  I saw Mr. Pierpont twitch,

10  however, when I said New Hampshire, and the

11  understanding -- the part of the understanding I

12  didn't state is Mr. Matthews would travel to New

13  Hampshire only for the purposes of visiting --

14            THE COURT:  His daughter.

15            MR. RING:  -- his child in college.

16            THE COURT:  All right, Mr. Pierpont, are

17  you twitching?

18            MR. PIERPONT:  I did indeed twitch, but

19  Mr. Ring did indeed cover what I was twitching in

20  regards to.  So the government is satisfied as

21  represented by Mr. Ring on the record there.

22            THE COURT:  So basically what I am

23  modifying is No. 8 to travel to the entire state of

24  Florida and Connecticut, as well as New Hampshire

25  for the purposes of visiting his daughter, and any

trips outside these locations would be referred in

the first instance to pretrial services.

MR. RING:  As approved by pretrial

services, yes.  Correct, your Honor.

THE COURT:  Are you comfortable with

that, as approved by pretrial services?

MR. PIERPONT:  Yes, your Honor.

THE COURT:  Okay.

MR. RING:  No. 9, there is no issue.

No. 10, there is no issue.  Here we are.

No. 11, so we're in partial agreement in

regards to No. 11.  No. 11 requires that all

monetary transactions greater than $1,000 must be

approved by the government and pretrial services,

and I am just going to stop at that line and address

this line first, and then I will address A in a

moment.

Mr. Matthews is in bankruptcy right now

under Chapter 11.  So he is submitting to the

bankruptcy court on a monthly basis a full

accounting.  What I have offered to the government,

and my understanding is the government has accepted,

is that Mr. Matthews would provide the same report

that he provides to the bankruptcy court to pretrial

services so pretrial services can have access to his

1    expenditures on a monthly basis.  So rather than him

2    being required to have his expenditures approved by

3    the government and/or pretrial services, it would be

4    the monthly reporting -- the report provided to the

5    bankruptcy court would be provided to pretrial

6    services.

7              THE COURT:  So basically No. 11 you want

8    actually to basically take out in its entirety, but

9    No. 12 would basically be because of the -- and then

10   No. 12 would be superseded by the reporting

11   requirements he has in conjunction with the

12   bankruptcy.

13             MR. RING:  Maybe.  I think No. 12 was a

14   one time thing.

15             THE COURT:  Okay.

16             MR. RING:  I'm not sure I understand No.

17   12, quite frankly.

18             THE COURT:  Okay.

19             MR. RING:  But I think it's been

20   satisfied.  I think it was something that was

21   discrete in time.  And so I agree with the Court

22   that 11 would be -- or at least that first sentence

23   in 11 would be wiped out as it exists, and the

24   obligation would be that Mr. Matthews would provide

25   a copy of his monthly financial reporting to

1    pretrial services, the bankruptcy reporting to

2    pretrial services.

3              THE COURT:  Mr. Pierpont?

4              MR. PIERPONT:  So, again, I think

5    actually, your Honor, the government would

6    respectfully disagree with the way that that was

7    characterized by Mr. Ring.  The monetary transaction

8    greater than $1,000 must be disclosed by the

9    government -- to the government or pretrial

10   services, would be the condition that they're

11   looking for.  It may well be that the bankruptcy

12   submission satisfies that disclosure, but what I

13   don't want is -- what the government would not like

14   to have happen here is this condition just read Mr.

15   Matthews tells pretrial services whatever he tells

16   the bankruptcy court.  So, in other words, if there

17   is some problem with the bankruptcy court filing in

18   that there may be an inadequate disclosure or

19   something along those lines, that would be a problem

20   with respect to these conditions here as well.  If

21   instead it just says Mr. Matthews will provide

22   whatever he provides to the bankruptcy court, in the

23   government's view that actually does not

24   sufficiently capture what this condition is

25   intending to get at.

1          THE COURT:  Just so I can be clear, to

2    simplify it, it sounds like essentially what you are

3    saying is you still want to have the condition with

4    respect to approval of the financial transactions.

5    The reporting is nice, but you want approval of the

6    transaction.

7          MR. PIERPONT:  So I would actually say

8    we can take out the word "approved."  We can take

9    out the word "approved by" and put in "disclosed

10   to," and if the same disclosure he makes to the

11   bankruptcy court he makes up here, if it satisfies

12   it, great, but if it doesn't satisfy it, just by

13   virtue of the fact that he's provided the same thing

14   to the bankruptcy court, if what he provides to the

15   bankruptcy court is not accurate, then he is still

16   going to be -- there is going to be a problem here.

17         THE COURT:  You had me and then you lost

18   me.  Let me make sure I understand exactly.  Mr.

19   Ring is --

20         MR. RING:  I am.

21         THE COURT:  You are just trying to give

22   me space so I have free rein to go right at him.

23         Just to make sure I understand, Mr.

24   Pierpont, it may be -- well, Mr. Matthews is under

25   an obligation to make disclosures to the bankruptcy

court, and as I understand the representation Mr.
Ring has made, which I have no reason to doubt and I
am fairly certain he is accurate, there are monthly
disclosures being made to the bankruptcy court.

Is that correct, Mr. Ring?

MR. RING:  That's my understanding, yes.

THE COURT:  So Mr. Matthews is now
required to make monthly disclosures to the
bankruptcy court.

Mr. Ring, let me ask this question as I
deal with Mr. Pierpont's question.  To your
knowledge the monthly disclosures to the bankruptcy
court, would they automatically require the
disclosure of any monetary transactions greater than
$1,000?

MR. RING:  That's my understanding, but
give me a moment, your Honor.

(Discussion held off the record).

MR. RING:  Yeah, so what I am told by my
client is even a dollar.

THE COURT:  So, Mr. Pierpont, is it your
understanding that the monthly disclosures to the
bankruptcy court wouldn't be captured by your
disclosure requirement?  I think what you are
basically saying is you want to make sure that there

1   is something as a condition if he didn't disclose

2   something that allows you to capture that.

3           MR. PIERPONT:  Right.  I think you've

4   struck at it, your Honor.  I think the point that I

5   am trying to make is the government doesn't have an

6   issue with the means of disclosure being the same

7   document.

8           THE COURT:  You just want enforceability

9   if there isn't a proper disclosure.  So it sounds

10  like what you want -- and I am not saying I am

11  willing to do that, but I just want to make sure I

12  clarify it.  So really what you are looking for is

13  the monthly financial reporting to the bankruptcy

14  court would be sufficient in terms of that

15  disclosure provided that that is an accurate

16  disclosure.  In essence, if there is -- the

17  government somehow determines that it is not an

18  accurate disclosure, that would be a violation of

19  one of the conditions of bond that the government

20  would then be free to act upon.

21          MR. PIERPONT:  I think you put it a lot

22  more clearly than I was able to, your Honor.  Yes.

23          THE COURT:  Mr. Ring, having clarified,

24  hopefully, Mr. Pierpont's concern, what are you

25  prepared to recommend in terms of language?

1          MR. RING:  So let me propose some

2     language that hopefully is a bit practical.  It

3     sounds like the intent is for Mr. Matthews to make a

4     disclosure of his expenditures over $1,000, or maybe

5     even less if he's given bankruptcy filings.  So I

6     think the simplest way to do this is to make this

7     condition that on a monthly basis he is to provide a

8     reporting of his expenditures to pretrial services,

9     period.  And he can accomplish that by providing the

10    bankruptcy filing if it includes all that.  If it

11    doesn't include that, he'll accomplish it otherwise.

12          So I think if the condition is he

13    provides a monthly accounting to pretrial services

14    of his expenditures, it sounds like the government's

15    concern would be satisfied and we don't have to talk

16    about the bankruptcy court proceeding because he can

17    accomplish it anyway that suits him, that serves the

18    purpose.

19          THE COURT:  Mr. Pierpont?

20          MR. PIERPONT:  That's agreeable to the

21    government, your Honor.

22          THE COURT:  Okay.  All right, so it

23    sounds like we may be -- drafting it sounds like

24    some language might be helpful.  Do you want to give

25    me that language again?  We can wordsmith that

1  language.

2          MR. RING:  I will try, your Honor.

3          THE COURT:  If you want to write

4  something --

5          MR. RING:  No, I'll give it a shot.  Let

6  me just --

7          THE COURT:  And what I am assuming then

8  -- just to make sure, Mr. Pierpont and Mr. Ring, you

9  are both on the same page, it is that we're going to

10 now develop a common reporting requirement that will

11 supersede what are now Conditions 11 and 12.

12          MR. PIERPONT:  So I think actually Mr.

13 Ring's characterization of 12, that being a one-time

14 disclosure, was accurate.

15          THE COURT:  So 12 is done.

16          MR. PIERPONT:  12 is done, that's right.

17          THE COURT:  So I will stop talking about

18 12.  I am the only one that seems to be bringing 12

19 in. So let's just focus on 11.

20          MR. RING:  Let me give you some language

21 for 11, and if this doesn't work we can sketch

22 something out during the recess.  Provide monthly

23 expenditure reports to pretrial services, period.

24 And if we could key that to -- when is it due for

25 bankruptcy court?

1          THE DEFENDANT:  I believe it's the 15th
2   of the month.
3          MR. RING:  So if we can key that to the
4   15th of the month, that will be perfect.
5          THE COURT:  I guess the question is, it
6   sounds like this greater than $1,000 language, which
7   must include monetary transactions greater than
8   $1,000 --
9          MR. RING:  So I'm being generous here,
10  Judge.  If we want to keep it to 1,000, that's fine.
11  I think as a practical matter he's going to give
12  them the bankruptcy --
13         THE COURT:  He's going to give them the
14  whole thing.  That's fine.  So I will stay out of
15  it.  So provide monthly expenditure reports to
16  pretrial services, period.
17         MR. RING:  Thank you.
18         THE COURT:  Everyone is happy.
19         All right, now we go back to the part
20  where everyone is less happy.
21         MR. RING:  Well, wait a second.  There
22  was A, and my preference would be for A to disappear
23  with the language that I just offered, but I will
24  let the government comment.
25         THE COURT:  Mr. Pierpont, is A gone?

1          MR. PIERPONT:  Give me one moment, your

2     Honor.

3          THE COURT:  Sure.

4          MR. PIERPONT:  The government's fine

5     with that.

6          THE COURT:  So A is gone.

7          MR. RING:  Constitutional crisis

8     averted, your Honor.  So I think we have already

9     commented that 12 has been satisfied.  So I think

10    that gets us back to the GPS issue.

11         I will be brief on this, your Honor.

12    Mr. Matthews was interviewed by the FBI in this

13    case, I want to say June of last year, maybe summer

14    of last year at the latest.  He's known for an

15    extended period of time that he was under

16    investigation in this case.  He was sent a target

17    letter in approximately December of last year, and

18    lo and behold when it came time for the government

19    to arrest him, he was found in his home.

20         So he's an individual who has known of

21    the government's investigation, known explicitly of

22    the fact that an indictment was impending, either in

23    the target letter or in conversations that were

24    relayed to Mr. Matthews that were -- conversations

25    that were made from the government to Mr. Matthews

1    via counsel.  He was actually told when he would be
2    indicted, and he was aware of the fact that in the
3    given month that he was indicted that he would be
4    indicted.  And, again, as I have already pointed
5    out, lo and behold he was found in his bed on the
6    morning that the government sought to arrest him.
7              Mr. Matthews has a wife.  He has two
8    children.  He has been a longstanding resident of
9    the Southern District of Florida.  There is no
10   specific articulable reason why Mr. Matthews would
11   be viewed as a flight risk here other than what I
12   understand has been represented in generalities to
13   the court down in Florida, and perhaps you will hear
14   again today.  Down in Florida initially the concern
15   that was expressed from the government to the court
16   was that Mr. Matthews may have a French passport.
17   It's turned out that that is not the case.  Mr.
18   Matthews represented at the time in Florida that
19   that was not true.  The government I think had heard
20   that it might be true, so there's no accusation that
21   the government wasn't acting in good faith, but the
22   government represented to me today that they do not
23   believe that he has a French passport anymore.  So
24   that concern is no longer at issue.
25             Mr. Matthews at various points in his

1    life has been a very wealthy man, and as a result of

2    that has travelled extensively.  So if you look at

3    his life, his life of activity, you'll see that

4    there was international travel over any given year.

5    That was at a point in time when he had money, had

6    the money to travel, as opposed to where he is now

7    in his present circumstances where he's in a

8    bankruptcy proceeding and has to his name a debit

9    card that allows him to come up here and stay at the

10   Radisson Inn, or wherever it is he stayed last night

11   in order to attend these proceedings.

12            So while it may be the case that Mr.

13   Matthews has lived the life of the rich and famous

14   in the past, he is somebody right now who has no

15   access to money.  If he did, I think we can safely

16   agree that the government would have seized and

17   attached those assets already.  And there is no

18   particular risk of flight with Mr. Matthews other

19   than the fact that he's a defendant in a case and

20   facing a lot of jail time.

21            Because of that he should be released,

22   and because of the reasons I have already stated he

23   has been released with agreement by the government;

24   in other words, although the government originally

25   sought to detain Mr. Matthews, and as a result of

that he spent several nights in county jail down in
Florida, he has been released.

It is understood that there are
conditions of release that can satisfy his
appearance.  The one last condition that is at issue
is whether he needs to lug around a GPS bracelet
every day.  I'm not exactly sure what type of
security that provides to the government.  It is a
major inconvenience to Mr. Matthews.  And I know in
the scheme of things maybe that doesn't sound like a
big deal, but wearing a bracelet can be very
uncomfortable, and it also could be restrictive in
the types of activities you can do.  When I say
"activities," I am not talking about getting on a
plane.  I am talking about going swimming, taking a
bath, doing pushups in a way that jiggles your legs
and causes the pretrial services officer to call you
and ask why you removed the blanket -- excuse me,
the bracelet when, in fact, it's not the case.

So from my point of view this is a
matter of convenience.  There's no specific reason
why he needs to wear this bracelet, and accordingly,
I would ask that it be removed.

THE COURT:  All right, Mr. Pierpont.

MR. PIERPONT:  So, your Honor, to be

1    clear, the government at the outset -- you know,

2    it's true that Mr. Matthews was detained I think

3    across a weekend, but that timing was so that

4    government counsel and Mr. Matthews' attorney in

5    Florida would be able to work out these conditions

6    over a three- or four-day period, which we did.  In

7    fact, we spent three to four days hammering through

8    all of these, concededly perhaps not perfectly

9    drafted conditions that Mr. Ring has gone through,

10   but there has -- there was broad agreement to make

11   sure that the government had comfort that Mr.

12   Matthews -- these conditions would prevent him -- or

13   would satisfy the government that he would neither

14   be a risk of flight nor prevent -- nor cause any

15   further harm to the community.

16           With respect to the GPS condition, it is

17   true that the first part of what the parties agreed

18   to was that Mr. Matthews would be within his right

19   within 30 days to raise this issue with the Court.

20   I understand it's been I think exactly 30 days since

21   that has happened.  And as I made very clear, that's

22   of course Mr. Matthews' right.  It would be Mr.

23   Matthews' right regardless of that, but it's the

24   government's position that this is actually a

25   necessary and vital aspect of the conditions here to

1    make sure Mr. Matthews doesn't flee.

2            Mr. Ring is correct that there was some

3    confusion on our part initially as to whether or not

4    he obtained -- or whether he had a French passport.

5    This was borne of the fact that Mr. Matthews was

6    born in France and did have significant travel

7    abroad.  In fact, there are some ties that Mr.

8    Matthews has abroad.  Two counts of the indictment

9    in fact relate to EB-5 funds being used to reimburse

10   Mr. Matthews and his daughter for a trip to France.

11   Beyond that, there are business contacts that Mr.

12   Matthews has abroad.  Mr. Matthews has made at least

13   one trip to China to solicit business in connection

14   with the Palm House Hotel, and he's met at least on

15   one occasion with the president of Grenada with

16   respect the EB-5 funding.

17           You couple that with a number of wealthy

18   friends -- and Mr. Matthews has moved in a number of

19   circles with people who have access to private jets

20   and the means to move -- from the government's

21   perspective there is risk of flight.

22           Maybe that alone wouldn't be enough,

23   your Honor, but I think there are a couple of other

24   things that I would like to go through here that I

25   think help justify why we'd have a GPS monitor and

1   that that is appropriate in this case.

2              THE COURT:  Just a moment, Mr. Pierpont.

3              I'm sorry.  Go ahead, Mr. Pierpont.

4              MR. PIERPONT:  So there is at least some

5   evidence out there, your Honor, that Mr. Matthews

6   may make a snap decision or poor judgment decision.

7   In fact, the government has spoken to at least two

8   witnesses that suggest that Mr. Matthews is not

9   stable at this time.  One witness in particular

10  recounted that Mr. Matthews threatened to kill

11  himself if that victim did not -- or that witness

12  did not give him money.  And another individual

13  reported similarly.

14             If you have somebody who is in that sort

15  of desperate straits in the context of what Mr.

16  Matthews is going through here, it would be the

17  government's view that there is an elevated risk

18  that he would make a poor decision, like leaving the

19  country.  Beyond that, your Honor, there is also

20  evidence --

21             THE COURT:  Mr. Pierpont, just on the

22  incidents you have raised, these things are issues

23  that have come up within the 30-day period that has

24  been under review now or was prior to that time?

25             MR. PIERPONT:  I believe that the one I

mentioned was prior to the indictment, but after the

government was already overt.  I think that both of

those actually were.  So not during this 30-day

period.  The government does not have a witness who

it's talked to.

THE COURT:  So basically in the period

under which the Southern District of Florida allowed

for the review of 30 days without prejudice, there

has been no issue that has arisen within that 30-day

period that has given the government -- that

provided any additional basis for the government to

suggest that the GPS monitoring should continue; is

that fair?

MR. PIERPONT:  At this time, that the

government is aware of, I think that's fair, your

Honor.  Again, I want to be perfectly clear--

THE COURT:  I understand.  I understand

your argument.

MR. PIERPONT:  Let me just say two

points to that in particular, which is, one, it was

always the government's position -- or maybe to put

it another way, it was never the government's

position that this would be a 30-day trial and we'd

see how it went for those 30 days.  The government's

position has been this was necessary all along the

1    way.  And, number two, just because Mr. Matthews

2    hasn't had an issue in the 30 days, in the

3    government's view that just shows conditions are

4    working, not that they should be lessened in any way

5    along the way.

6              Now, with that said, you know, Mr. Ring

7    mentioned some of what Mr. Matthews has done since

8    the government has been overt.  It is true Mr.

9    Matthews has been here, but there are some

10   concerning things that Mr. Matthews has done since

11   the government has been overt.  In fact, there are a

12   number of monetary transactions that look suspicious

13   to the government.  In fact, one may tie to moving

14   the proceeds of the fraud, of the EB-5 money that

15   the government is still looking into at this time,

16   and that has happened since agents of the FBI and

17   IRS went down and spoke to Mr. Matthews.  In fact,

18   there is one of those transactions that was as late

19   as October of 2017.

20             Secondly, the day in May that the FBI

21   agents went to speak to Mr. Matthews, although he

22   did come to the door, he declined to speak with

23   them.  At that point the agents went and spoke to

24   another individual by the name of Nicholas Laudano

25   later in the day.  They set up a meeting to speak

with Mr. Nicholas Laudano, and Mr. Laudano confessed
during that meeting that he had just spoken with Bob
Matthews in the parking lot across the street from
where Mr. Laudano was scheduled to meet with the
agents.

Again, what that suggests to the
government is there is either not awareness of the
importance of the scenario or not really an
awareness of the gravity of the scenario that Mr.
Matthews now finds himself in, both the fact that
he's continuing to engage in these transactions that
are suspicious and the fact that he was willing to
reach out to somebody that he was well aware, given
the fact that he was aware of what the government
was looking at, to reach out to one of the witnesses
and meet with him literally right before that
witness met with the government.

I would add as well, your Honor, that
that same -- there is also a history here that is
problematic for Mr. Matthews.  So, for instance, Mr.
Matthews gave some SEC testimony.  A lot of that SEC
testimony had to do with the property at 115 Lower
Churchill Road, which is the subject of the bank
fraud in this indictment.  Now, the story that Mr.
Matthews unfurled in the SEC testimony was that it

was a business opportunity for Mr. Laudano and Mr.
Laudano just -- it was sort of referred to him, but
it was his property and he could do what he wanted
with it.

Mr. Laudano, as this Court is aware, has
recounted a different story. In fact, there was --
and I hate to use a buzz word in the press right
now -- but some sort of collusion between Mr.
Laudano and Mr. Matthews whereby Mr. Matthews would
continue to reside in that property and act as
though that property was his own.

Mr. Laudano, acting on his own,
recounted to Mr. Matthews that he had told the FBI
this, and Mr. Matthews' response to Mr. Laudano was,
explicative, "perjury," meaning he was thinking
about his SEC testimony and realizing that there is
a potential perjury issue there as well.

Now, I would couple with this, your
Honor, the ties to the community that Mr. Matthews
has are not actually all that great. As Mr. Ring
has indicated, Mr. Matthews at this point is not a
man with means, as the government can see -- that
the government can see at this point. All of his
properties are encumbered. He's in bankruptcy right
now. He has grown children, or nearly grown

children, I think it's 17 and 19, I believe are the
ages.  It would not be difficult for the Matthewses
to pick up and leave.

You couple all of these things that I
have spoken about, your Honor, and I think you tie
it to the wide ranging fraud that is alleged in the
indictment, it's a very serious offense, and it's an
international fraud.  It involves victims in
countries in China and Iran and elsewhere.  It
involves victims here in the United States as well.
It crosses at least two states.  It's a multimillion
dollar fraud.

You look at all of that and everything
else I just put there, and then on the other side
you put down a $500,000 secured bond by third
parties, well, in the government's view that
$500,000 bond, in light of everything else I have
just recounted, is not sufficient to ensure that Mr.
Matthews would not leave the jurisdiction.

And this is where the GPS monitoring
comes in.  Mr. Ring asked what is it that the
government is achieving or getting by the fact that
there is this GPS monitoring.  Well, it's the
government's understanding that Mr. Matthews, being
aware that the government can check in on him, can

know where he is at any time and make sure that --
you know, he knows that the government is keeping an
eye him, or pretrial services are keeping an eye on
him, it makes it that much less likely that he is
going to make a snap bad decision or a thoughtful
bad decision, along with the $500,000 condition that
third parties have secured.

And so, your Honor, in light of that
sort of factual background, it's the government's
position, as it was 30 days ago, that these are the
conditions that are sufficient but not greater than
necessary to ensure that Mr. Matthews does not flee
the jurisdiction.

THE COURT:  Mr. Ring?

MR. RING:  May I, your Honor?  This has
proved to be one of the more interesting bond
hearings.  So let me start with a little bit of
procedure.  As the Court knows, in the statute the
government -- excuse me, the defendant has the right
to examine witnesses and evidence that is presented
against him at a bond hearing or at a detention
hearing.  I have just heard the prosecutor basically
explain to the Court all of the facts and evidence
in its case and explain why those facts warrant GPS
monitoring, and I'll get back to that -- or some of

1    those arguments in detail in a minute.

2              But what's interesting, given where we

3    are in the nature of the government's argument, and

4    I don't think we're going to get there, I hope we're

5    going to prevail with the Court now on this issue,

6    but if we don't, I think I am in a position where

7    I'm obligated to ask for the opportunity to

8    cross-examine witnesses by the government in regard

9    to all of the representations that the government

10   just made to the Court regarding its case.

11             So we're in an interesting procedural

12   posture right here given the way the government has

13   chosen to approach this.  Hopefully we're not going

14   to be there.  I just say this because I'm in a

15   situation where I am sitting here listening to the

16   government cascade over a period of minutes all of

17   the facts that it supposedly has gathered and

18   intends to present at trial in this case, and

19   presumably the Court is in the same position, or

20   even in a lesser position knowing less about this

21   case than me.  So I think it's not entirely fair to

22   Mr. Matthews or the Court the way we're proceeding

23   here now.

24             That being said, in regard to what I see

25   as -- or what I think I see as the substance of the

1   government's arguments, it's Mr. Matthews threatened

2   to somebody or said in hyperbole -- we don't know

3   the circumstances because we're hearing it in a

4   general summary from the government -- if I don't

5   get money, I'm going to kill myself.  GPS isn't

6   going to stop him from killing himself.  This is an

7   international offense.  There were investors in

8   China and Iran.  There was travel to Grenada maybe

9   in connection with, maybe not in connection with

10  this offense.  The president of Grenada was met.

11  Well, that's a reason for Mr. Matthews not to

12  travel.  I don't know what that means in regard to

13  why he would be at risk of travelling.  Saying it's

14  an international offense is great.  All right, very

15  sexy.  There are reporters in the courtroom.  I am

16  glad to hear it.  It has no bearing on the issue we

17  are talking about now.  Saying that Mr. Matthews has

18  colluded with witnesses, GPS monitoring is not going

19  to have any bearing on that issue even if it were to

20  be true.

21          Again, I am in a position where I am

22  listening to all sorts of allegations for the first

23  time, hearing no witnesses.  It's great that the

24  government can say all of this stuff, but at some

25  point in time it's going to have to prove it, and it

1    may actually have to be at a bond hearing given the

2    government's approach here.

3              I am not going to go through every one

4    of these, your Honor.  The fact that he has rich

5    friends, the fact that he used to travel, the fact

6    that victims, as alleged by the government, are

7    international, doesn't mean he's a risk of flight.

8    He has not fled during the pendency of the

9    government's investigation.

10             He has children in this country.  He has

11   come to Connecticut for these proceedings.  He's

12   here.  He is prepared to move forward in this case,

13   and if all of these extreme scenarios that the

14   government has presented are true, it really doesn't

15   have anything to do with whether he needs a GPS or

16   not.  His case is no different than any other case

17   where you have an alleged fraud and somebody who

18   used to be wealthy or knows some rich friends.

19   That's not enough to warrant a GPS monitoring for

20   somebody who is in this country with his family on a

21   bond that is secured by his wife's signature and by

22   his wife's family members and their property.

23   That's enough, your Honor.

24             Thank you.

25             THE COURT:  All right, let's do this.

1    On this issue of the GPS monitoring, I mean I

2    understand the point Mr. Pierpont is making, I

3    understand the points Mr. Ring is making, but I am

4    trying to zero in and focus on this issue of risk of

5    flight.  There are some general and even more

6    specific concerns that have been raised about

7    whether or not in the context of this there is some

8    reason that Mr. Matthews might flee.  Why don't

9    we -- but Mr. Ring's notion that to the extent that

10   some of these more significant issues are really

11   what is driving the GPS monitoring, it might be more

12   appropriate to at some point have a more fulsome

13   hearing to address those issues.

14            Why don't I -- I think what I am

15   inclined to do right now is -- here's what I will

16   do.  I will continue the condition in terms of GPS

17   monitoring for a period of 30 days, and if Mr. Ring

18   wants to have some hearing or something in order to

19   address that afterwards, we can then address it at

20   that time.

21            All right, so then what we have now are

22   the modifications on the conditions, which probably

23   is going to be best for me to write up.  So

24   basically modifications -- well, 7 is going to stay

25   the same, I am just going to renew it for another

1    30 days.  It's really 4, 8, and 11 that need to be

2    modified.  And Condition 4, it's no contact with

3    witnesses or victims identified by the court to Mr.

4    Matthews or counsel.

5              MR. RING:  By the government.

6              THE COURT:  By the government.  I'm

7    sorry.  I'm sorry, identified by the government.  It

8    would be nice if I could read my own handwriting.  I

9    had short for "government," but I read something

10   differently.

11             So no contact with witnesses or victims

12   identified by the government to Mr. Matthews or

13   counsel.  For 11, 11 now changes to simply provide

14   monthly expenditure reports to pretrial services.

15   I'm sorry, I forgot No. 8.  I have to go back to No.

16   8.  No. 8 is travel is extended to the entire state

17   of Florida and Connecticut, as well as New Hampshire

18   for the purpose of visiting his daughter in college

19   there.  Any additional travel will be as approved by

20   pretrial services.  I have got the language --

21             THE CLERK:  We'll issue a new amended

22   order.

23             THE COURT:  Yes, we will do an amended

24   order and let counsel review that.

25             Any questions or concerns about what I

have articulated?  Mr. Pierpont?

          MR. PIERPONT:  No, your Honor, nothing
-- as you have articulated it, I think that's fine.

          THE COURT:  Mr. Ring?

          MR. RING:  That's fine, your Honor.  I
think we probably should set a date.

          THE COURT:  Why don't we have a date.
Let's have an additional bond hearing to figure out
how to deal with these additional issues.  I think
then we'll have at least a 60-day period to
determine what risks are there and we can allow for
a more fulsome record.

          Do you have proposals?  Do you all want
to propose something?

          MR. RING:  Your schedule is probably
tougher than mine.

          THE COURT:  It may or may not be.  We
want this 30-day period to have expired.  It looks
like May 25 at 11:00 a.m.

          MR. RING:  That would be fine with the
defense, your Honor.

          MR. PIERPONT:  May I just have one
moment?

          THE COURT:  Yes, take your time.

          MR. PIERPONT:  So, your Honor, I am

1  being informed that both the agents, who are here

2  now, will be among the witnesses that the government

3  would call in this case, are on trial, at least to

4  that Friday before, which I think will be that day.

5  So we'd request I think, your Honor, whether it be

6  that next week or early June, would be the

7  government's request.

8            THE COURT:  All right, hang on.

9            MR. RING:  Memorial Day is the 28th.

10           THE COURT:  Yes.  So that week is

11  probably -- let me sort of go into the following

12  week.  Looking at my schedule, we're looking at --

13  in terms of Speedy Trial Act, we're looking at a

14  June 4th jury selection.  So let me do this.  Let me

15  -- I can do the 30th at 11:00 a.m., May 30th.  Mr.

16  Ring?

17           MR. RING:  That would work, your Honor.

18           THE COURT:  Are you still on trial?

19           MR. PIERPONT:  Again, I think the

20  problem is, your Honor, that I understand it's a

21  major white-collar trial that could go as many as

22  four weeks, and it begins on May 9th.  I understand

23  that we're running up against some issues over --

24           THE COURT:  So it's --

25           MR. PIERPONT:  It's a May 9th trial in

1   front of Judge Underhill, and it's, as it stands

2   right now, supposed to go four weeks, is what I

3   understand.  So there is a chance they will be done

4   by then, but there is a chance they may not as well.

5           MR. RING:  I think the Court can take

6   judicial notice that Judge Underhill is in this

7   courthouse, your Honor, and perhaps right down the

8   hall.

9           THE COURT:  He is right down the hall.

10  I guess I am just trying to figure out -- I guess

11  the question is, you know, under the Speedy Trial

12  Act, Mr. Matthews is entitled to have a jury trial

13  by the 4th.  So I am just figuring -- well, what is

14  your proposal, Mr. Pierpont?  That's what I need to

15  figure out.

16          MR. PIERPONT:  My proposal -- I

17  understand the following week is June 4th.  I see

18  that is a problem.  So right now May 30th is the

19  date -- in fact, why don't we put May 30th for the

20  time being and the government will find a way to

21  figure it out.

22          THE COURT:  Let's put May 30th at

23  11:00 a.m. and then we'll see where things are.

24          MR. RING:  Thank you, your Honor.

25          THE COURT:  And I guess I will say this.

You know, I think, to the extent, Mr. Ring, Mr. Matthews is seeking something other than the GPS monitoring, given that there are certain serious charges in terms of risk of flight concerns, if there is some alternative -- you might want to think about if there is some alternative you wish to offer short of that, and I'm happy to entertain that as well. And the parties are sure able to think about that.

So I think we have the conditions. We have set a proceeding on this for May 30th.

And then it is a further condition of bond, Mr. Matthews, you appear before me at 9:00 a.m. on June 4th for jury selection, and then we also have this other court proceeding, or any other court proceeding where your presence is required. Understood, sir?

THE DEFENDANT: Yes, your Honor.

THE COURT: Any other scheduling issues at this time? Mr. Pierpont? Mr. Ring?

MR. PIERPONT: Nothing further from the government.

THE COURT: Anything further, Mr. Ring?

MR. RING: Just one small matter. And I think I began with this. My appearance was for this

1  matter in particular.  Hopefully that will be

2  resolved soon.  If it's not, it will be brought to

3  the Court's attention.

4          THE COURT:  That's fine.  All, right.

5  Thank you all very much.

6          We're adjourned.

7          (Proceeding concluded 4:20.)

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1

2          I certify that the foregoing is a correct

3    transcript from the record of proceedings in the

4    above-entitled matter.

5

6                              4/26/18

7                               Date

8

9                    /S/   Sharon Montini

10                       Official Reporter

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25